**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **KELLEE CARMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-2538-JAR** |
| | ) | |
| **THE CBE GROUP, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff Kellee Carman filed this lawsuit against defendant The CBE Group, Inc.

("CBE"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692 *et seq.* This matter is now before the Court on CBE's Motion for Summary Judgment

and for Sanctions (Doc. 38). Plaintiff moved to supplement her response with additional

authority (Docs. 45, 52), and CBE moved for leave to respond (Doc. 46), which the Court grants.

The Court heard oral argument on March 11, 2011, and took the matter under advisement. For

the reasons stated below, the Court grants CBE's motion for summary judgment on plaintiff's

FDCPA claims, and denies its request for sanctions.

## I.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[1]

In applying this standard, the court views the evidence and all reasonable inferences therefrom in

---

[1] Fed. R. Civ. P. 56(a).

the light most favorable to the nonmoving party.[2]  A fact is "material" if, under the applicable

substantive law, it is "essential to the proper disposition of the claim."[3]  An issue of fact is

"genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve

the issue either way."[4]

The moving party initially must show the absence of a genuine issue of material fact and

entitlement to judgment as a matter of law.[5]  In attempting to meet this standard, a movant that

does not bear the ultimate burden of persuasion at trial need not negate the other party's claim;

rather, the movant need simply point out to the court a lack of evidence for the other party on an

essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to

"set forth specific facts showing that there is a genuine issue for trial."[7]  The nonmoving party

may not simply rest upon its pleadings to satisfy its burden.[8]  Rather, the nonmoving party must

"set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[2]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[3]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[4]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[5]*Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

[7]*Anderson*, 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[8]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[9]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[10]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[11]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]

## II.    Uncontroverted Facts

Before reaching the uncontroverted facts, the Court addresses plaintiff's failure to comply with the local rule for summary judgment responses, which requires:

---

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[10]*Adams*, 233 F.3d at 1246.

[11]Fed. R. Civ. P. 56(c)(4).

[12]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

(1) . . . [A] section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.

(2) if the party opposing summary judgment relies on any facts not contained in the movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above.[15]

The response must "fairly meet the substance of the matter asserted."[16]

Instead of tracking CBE's Statement of Uncontroverted Facts, indicating those that are disputed and the reasons why, with citation to the record, plaintiff skips to Rule 56.1(b)(2), and sets forth additional facts in separately numbered paragraphs, with references to only two of CBE's uncontroverted facts she purportedly disputes. Plaintiff's failure to strictly comply with the local rules has made this Court's task much more difficult than should be necessary in ruling on a motion for summary judgment. Although it will not go so far as to deem CBE's facts uncontroverted, plaintiff and her counsel are admonished that the Court expects parties and their counsel to follow the rules of civil procedure in the future.

The following facts are either uncontroverted or viewed in the light most favorable to plaintiff. On August 30, 2009, plaintiff's delinquent Home Depot Citbank account was placed with CBE for collection. CBE attempted to collect that debt by sending plaintiff an initial letter, containing the § 1692g(a) required notices. CBE attempted to contact plaintiff at her home and

---

[15]D. Kan. R. 56.1(b).

[16]D. Kan. R. 56.1(e).

work telephone numbers between August 31 and October 24, 2009. CBE called plaintiff's home number 0-4 times a day and called her work number 0-3 times a day, for a total of 149 calls to plaintiff during a two month period.[17] CBE maintained a log of all attempts to contact plaintiff, which included all telephone calls made, all contacts with plaintiff, any messages left, and when the initial validation letter was mailed. The account notes show that 92 calls were placed to plaintiff, at both her home and work numbers, in September 2009, and that 55 calls were placed to plaintiff, at both her work and home numbers, in October 2009.

CBE spoke with plaintiff, at her place of employment, on September 2, 2009.[18] The collector who spoke with plaintiff verified plaintiff's identity, provided the collector's identity, notice that the call was from a debt collector attempting to collect a debt, and notice that all information would be used for that purpose. Plaintiff said that she was expecting an important call and asked for a phone number to call CBE back. Plaintiff never returned CBE's call or called CBE at any other time. Plaintiff never told CBE that she could not receive phone calls at her place of employment.

CBE did not speak to plaintiff again and did not leave any phone messages for plaintiff. If CBE reached plaintiff's voice mail, it would hang up without leaving a message. CBE called plaintiff from several different telephone numbers.

CBE has specific policies and procedures addressing the daily number and timing of calls placed to debtors. All calls made by CBE must be at least 120 minutes apart, until contact is

---

[17]Although CBE's account notes show that 166 calls were placed to plaintiff, twelve of these calls were made to wrong numbers that did not belong to plaintiff.

[18]*See* Doc. 40 (audio exhibit).

made or a message is left. On September 17, 2009, defendant placed a phone call to plaintiff's home phone number at 10:36 a.m. and again at 11:01 a.m. CBE's account notes for that date at 10:36 a.m. include the code "LB," or "line busy." When it was unable to complete the first call to plaintiff, CBE called her again at 11:01 a.m.

Plaintiff filed her verified Complaint, asserting CBE violated four sections of the FDCPA: 1) § 1692c(c)(1), (2) and (3), by communicating with plaintiff after receiving a written cease and desist notice; 2) § 1692d(5), by causing the telephone to ring repeatedly and continuously with an intent to annoy or harass plaintiff; 3) § 1692d(6) by failing to provide meaningful disclosure of its identity by calling and hanging up without leaving a message; 4) § 1692e(10), by using false representations and deceptive means to collect a debt by calling and hanging up without leaving a message; and 5) § 1692e(10), by using false representations and deceptive means to collect a debt by calling plaintiff after receiving a written cease and desist notice.[19]

CBE filed a Motion to Dismiss plaintiff's Complaint,[20] which the Court denied without prejudice after plaintiff moved to amend her Complaint.[21] Plaintiff filed a First Amended Complaint withdrawing all claims regarding sending a written cease and desist letter to CBE and asserting the following additional allegations: 1) CBE violated § 1692c(a)(3) by contacting her at her place of employment after being told not to; and 2) CBE violated § 1692f by using unfair means in an attempt to collect a debt by calling and hanging up without leaving voice mail

---

[19](Doc. 1, ¶ 17.)

[20](Doc. 9.)

[21](Doc. 17.)

messages.[22]

CBE filed a Motion to Dismiss plaintiff's Amended Complaint.[23]  In plaintiff's response, she withdrew her claim that CBE violated § 1692c(a)(3) and sought leave to cure the deficiency in her claim under § 1692(d)(6) to allege that CBE failed to provide meaningful disclosure of its identity.[24]  The Court denied CBE's motion to dismiss.[25]  Plaintiff subsequently omitted from the Pretrial Order her § 1692d(6) claim.[26]  Although counsel for plaintiff orally moved to amend the Pretrial Order at oral argument, it subsequently informed the Court that it would not move to amend to add that claim.[27]

At her deposition in July 2010, plaintiff testified that she was sent a copy of the original Complaint along with a verification page to sign, that her attorneys discussed the Complaint with her before they filed it, that she had the opportunity to read the original Complaint and review it for accuracy, and that she understood that she was verifying that everything in the Complaint was true.  She testified that she told her attorneys that she informed CBE in writing that she wanted the calls to stop because she had a letter ready, but did not send it.  Although the verified Complaint stated that she had informed CBE in writing, she did not bring this to her attorneys' attention because she intended to send it, but did not.  When pressed, plaintiff conceded that she

---

[22](Doc. 22.)

[23](Doc. 25.)

[24](Doc. 26.)

[25](Doc. 34.)

[26](Doc. 36.)

[27](Doc. 54.)

did not read through the entire Complaint before signing it. Plaintiff testified that at the time she filed her First Amended Complaint, she believed that she informed CBE that she could not receive personal telephone calls at her place of employment, but it was not until after she heard the recorded conversation between herself and CBE's collector did she become aware that she never told CBE that she could not receive phone calls at her place of employment. Plaintiff attributed the inconsistencies in her Complaints to stress. Plaintiff testified that she participated in filling out discovery responses.

Plaintiff further testified that she considered receiving telephone calls at any time during the day constant and continuous. She testified that she knew the calls were from CBE because she looked up the telephone numbers that appeared on her caller ID, and that other debt collectors were also calling her during that time. Plaintiff testified that she felt that CBE's conduct in calling and not leaving a voice mail message was deceptive and intimidating because she did not know who they were or what they wanted. She explained that by not leaving a message, she knew that CBE would continue to call back, although she admitted that she would probably not have returned the message. Plaintiff testified that she thought the calls from CBE were unfair and intimidating, although no one from CBE threatened or misled her. Plaintiff testified that she was emotionally harmed by the calls she received from CBE. Plaintiff testified that she filed the lawsuit to stop the calls and not to get rid of the debt that CBE was trying to collect.

## III.    Discussion

Plaintiff contends that CBE violated three specific provisions of the FDCPA.[28]  The Court addresses each in turn.

### A.    Section 1692d(5)

15 U.S.C. § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Section 1692d(5) prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."[29]

CBE asserts that the record before the Court presents no genuine issue of material fact as to its intent to annoy, abuse or harass plaintiff in violation of the FDCPA.  CBE argues that it is reasonable to infer that the number of calls in this case was due to the difficulty in reaching plaintiff, not an intent to harass her.  Because plaintiff chose to avoid calls from CBE, it argues, she created a situation where CBE had to place repeated calls to try to talk to her.  Plaintiff alleges that a material issue of fact remains as to whether placing 149 telephone calls to plaintiff within a two-month period rises to the level of being constant and continuous and was done with the intent to annoy, abuse or harass her.  Because CBE's call volume constitutes a triable question of fact for a jury, plaintiff argues, CBE is not entitled to judgment as a matter of law.

---

[28]As previously discussed, plaintiff did not include her previously asserted § 1692d(6) claim in the Pretrial Order (Doc. 36), and counsel confirmed after oral argument that plaintiff would not seek leave to amend to include that claim (Doc. 54).  Accordingly, that claim has been abandoned. *See Franklin v. United States*, 992 F.2d 1492, 1497 (10th Cir. 2002) (the pretrial order supersedes the pleadings and controls the direction of the case); *see also* Fed. R. Civ. P. 16(e).

[29]15 U.S.C. § 1692d(5).

The parties do not cite, nor did the Court's independent research reveal, any Kansas

district court cases discussing this specific issue. In determining liability under § 1692d(5),

courts often consider the volume and pattern of calls made to the debtor.[30] As CBE points out,

there is some disagreement among district courts as to the specific volume and pattern of calls

sufficient to raise a triable issue of fact of intent to annoy, abuse or harass. Several courts have

found that the reasonableness of the volume and pattern of telephone calls is a question of fact

best left to a jury.[31] For example, in *Krapf v. Nationwide Credit, Inc.*, a California district court

recently found it was a jury issue as to whether the debt collection agency intended to harass

when the evidence was that, from May to June 2009, the defendant called on the average of

between four to eight times per day, including instances where the calls were only three minutes

apart and where the defendant called even after the plaintiff had picked up the phone and talked

to the defendant's representative.[32] In so ruling, the court did not attempt to harmonize the

disagreement between district courts on the issue, noting they "simply [took] different views as

to the amount and pattern of calls sufficient to raise a triable issue of fact of intent."[33]

By contrast, other courts have recently found that "even 'daily' calls, unaccompanied by

---

[30]*See Krapf v. Nationwide Credit Inc.*, No. 09-00711, 2010 WL 2025323, at *4 (C.D. Cal. May 21, 2010) (collecting cases).

[31]*See, e.g., id.*; *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149, 1160-61 (N.D. Cal. 2007) (granting summary judgment in favor of a plaintiff upon evidence that the defendant made 54 calls to her at her work over a six-month period, including a day where six calls were made); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 505-06 (D. Md. 2004) (holding that it was a jury question whether 26 or 28 calls over a two-month period was reasonable, where the calls were not made excessively early or late, were made on a daily basis at times, and, at one point, three calls were made within five hours); *Majeski v. I.C. Sys., Inc.*, No. 08-5583, 2010 WL 145861, at *3-4 (N.D. Ill. Jan. 8, 2010) (finding a triable issue of fact existed as to the defendant's intent where the collector placed 67 calls to the debtors over the course of six months at various intervals and the evidence indicated that the debtors screened their calls and answered the phone extremely rarely).

[32]*Krapf,* 2010 WL 2025323, at *4.

[33]*Id.*

other egregious conduct, such as calling immediately after hanging up, calling multiple times in a single day, calling places of employment, family or friends, calling at odd hours, or calling after being asked to stop, is insufficient to raise a triable issue of fact for the jury."[34]  For example, in *Tucker v. The CBE Group, Inc.*, a Florida district court recently found that it was not reasonable to infer an intent to harass where the defendant made 57 calls to the plaintiff over an unspecified period, including seven calls in one day, noting that the defendant never actually spoke to the plaintiff, was never asked to cease calling, and never called back the same day after it had left a message.[35]  Similarly, in *Saltzman v. I.C. Systems, Inc.*, a Michigan district court granted summary judgment for a defendant who made 20 to 50 unsuccessful calls and 10 to 20 successful calls over roughly a month, noting that the "significant disparity between the number of phone calls placed by Defendant and the number of actual successful conversations with Plaintiff . . . suggest[s] a 'difficulty of reaching Plaintiff, rather than an intent to harass.'"[36]  The same court subsequently granted summary judgment in favor of a defendant where the volume and pattern of the calls, without any further oppressive conduct and where plaintiffs did not answer their calls because they recognized numbers from defendant on their caller ID, was a legitimate persistent effort to reach the plaintiff.[37]  In *Katz v. Capital One*, a Virginia district court granted summary judgment in favor of a bill collector that called plaintiff 15 to 17 times

---

[34]*See Waite v. Fin. Recovery Servs., Inc.*, No. 09-cv-02336-T-33AEP, 2010 WL 5209350, at *3 (M.D. Fla. Dec. 16, 2010) (collecting cases).

[35]710 F. Supp. 2d 1301 (M.D. Fla. 2010); *accord Waite*, 2010 WL 5209350, at *5 (granting summary judgment for the defendant where 132 calls to plaintiff in a nine-month period, which were unaccompanied by any other egregious conduct, did not demonstrate an intent to harass, annoy or abuse).

[36]No. 09-10096, 2009 WL 3190359, at *6-7 (E.D. Mich. Sept. 30, 2009).

[37]*Pugliese v. Prof. Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *10 (E.D. Mich. June 29, 2010).

after her lawyer had faxed a letter to the original creditor disputing the debt and stating that the bill collector was not to contact her, finding that "[w]ithout any indicia of an unacceptable pattern of calls, this does not constitute harassment."[38]  And, in *Jiminez v. Accounts Receivable Management, Inc.*,  a California district court granted summary judgment in favor of the defendant where all of the call attempts were made between the hours of 8:00 a.m. and 9:00 p.m., were mostly attempted once a day, where three calls were only made once on a single day, no phone calls were made the same day within two hours of each other unless a busy signal was received, no calls were made after plaintiff had spoke to one of defendant's agents or deliberately hung up on an agent, only one voice mail message was left, there was no improper calls to plaintiff's work, or that plaintiff requested the calls to cease.[39]

Plaintiff asks the Court to consider as supplemental authority the recent case of *Brown v. Hosto & Buchan, PLLC*,[40] where the court found that allegations of 17 calls in a one month period were sufficient to plausibly allege a claim under § 1692d(5) for purposes of a motion to dismiss.  That court also noted the disparate case authority, but purported to distinguish cases involving "conclusory allegations or allegations that simply recite the elements of § 1695d(5)."[41] Here, the case is well past the pleading stage and the Court previously denied CBE's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[42]  Thus, it would not be appropriate for the Court to

---

[38]No. 09-1059, 2010 WL 1039850, at *3 (E.D. Va. Mar. 18, 2010) (citing *Saltzman*, 2009 WL 3190359).

[39]No. 09-9070, 2010 WL 5829206, at *5 (C.D. Cal. Nov. 15, 2010) (citing cases).

[40]—F. Supp. 2d —, 2010 WL 4352932 (W.D. Tenn. Nov. 2, 2010).

[41]*Id*. at *4.

[42](Doc. 34.)

conclude as a matter of law that there is sufficient evidence of CBE's intent to annoy, harass or abuse plaintiff, and *Brown* is not applicable.[43]

Plaintiff also cites as supplemental authority *Meadows v. Franklin Collection Services, Inc.*,[44] an unpublished decision recently issued by the Eleventh Circuit. In that case, the court reversed the district court order granting summary judgment in favor of the debt collector, where the plaintiff received approximately 300 calls over a two and a half year period regarding debts she did not owe and people she did not know, which she conveyed to defendant.[45] The court rejected defendant's argument that its telephone calls were not harassing because plaintiff did not answer them, as the plain language of 1692d(5) prohibits "causing a telephone to ring . . .with the intent to annoy, abuse or harass any person at the called number," stating that the statute itself recognizes that answering the phone is not necessary for there to be harassment.[46] The court explained,

> This makes good sense because a ringing telephone, even if screened and answered, can be harassing, especially if it rings on a consistent basis over a prolonged period of time and concerns debts that one does not owe. As Meadows testified, even though she did not answer every call, she had to stop what she was doing to see who was calling. And the reason Meadows did not answer the calls was because she had previously told Franklin multiple times that she did not owe the debt and the debtors did not live with her. Thus, a reasonable juror could find that Franklin's telephone calls were harassing even though Meadows did not

---

[43]*See Jiminez*, 2010 WL 5829206, at *4 (rejecting plaintiff's reliance on *Brown* at summary judgment stage).

[44]No. 10-13474, 2011 WL 479997 (11th Cir. Feb. 11, 2011).

[45]*Id*. at *2.

[46]*Id*. at *3.

answer many of the calls.[47]

This case appears to support CBE's position, however, as the court noted the oppressive conduct added to the volume and pattern of calls, justifying leaving the issue for the jury. In *Meadows*, defendant did not cease calling, despite plaintiff informing it that she did not owe the debt and that the debtors did not live with her.

In this case, the Court finds there is no evidence of an unacceptable pattern of calls. The record is lacking of any indicia of the type of egregious conduct raising issues of triable fact when coupled with a high call volume. Although the number of calls in September and October appears somewhat high, they are unaccompanied by any other egregious conduct to evince an intent to annoy, abuse or harass.[48] It is uncontroverted that CBE spoke to plaintiff only once, that she asked to call back at a later time, that plaintiff did not discuss her debt with CBE during that one phone call, and that CBE was unable to reach plaintiff at any other time. Plaintiff testified that she deliberately avoided answering any other calls from CBE. There is no evidence that CBE's call attempts were made at odd or unreasonable hours. Unless a busy signal was received, no phone calls were made on the same day within two hours of each other. There is no evidence that the calls were made after plaintiff had spoken to one of CBE's agents or had deliberately hung up on an agent. CBE did not leave any voice mail messages on plaintiff's recording device and there is no evidence that CBE made deliberate "hang up" calls to plaintiff

---

[47]*Id.*

[48]Plaintiff also contends that CBE called and hung up without leaving a voice mail message. This allegation typically relates to a § 1692d(6) claim, which prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." Plaintiff has abandoned her § 1692d(6) claim. *See Udell v. Kan. Counselors, Inc.*, 313 F. Supp. 2d 1135, 1143 (D. Kan. 2004) (holding that the placement of four automated telephone calls to consumers over the course of seven days without leaving a message did not, as a matter of law, constitute harassment under § 1692d(6)).

after she answered the phone.  There is no evidence plaintiff ever disputed the debt or requested that the calls to her cease.  Although plaintiff testified as to her distress and annoyance as a result of CBE's calls, her opinion regarding whether the calls were harassing is not evidence of CBE's intent.[49]  Instead, the evidence suggests an intent by CBE to establish contact with plaintiff, rather than an intent to harass.

Viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has failed to meet her burden of showing that a genuine issue of material fact as to whether CBE's repeated phone calls to plaintiff demonstrate an intent to annoy, abuse or harass in violation of § 1692d(5).  Accordingly, summary judgment is granted on this claim.[50]

## B.   Sections 1692e(10) and 1692f

Plaintiff alleges that when CBE called and hung up without leaving a message, it violated § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means" to collect or attempt to collect any debt or to obtain information concerning a consumer, and § 1692f, which prohibits a debt collector from using "unfair or unconscionable means" to collect or attempt to collect any debt.

### 1.   False representation/deceptive means

---

[49]*Pugliese v. Prof. Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *9-10 (E.D. Mich. June 29, 2010).

[50]Because the Court finds that CBE did not violate 15 U.S.C. § 1692d(5)t, it does not reach the issue of whether it is entitled to a bona fide error defense under 15 U.S.C. § 1692k(c). Even if CBE violated  § 1692d(5), however, it would be entitled to the defense as it has shown that the violation was : (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error. *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006). In the one instance cited by plaintiff, where two calls were made approximately 25 minutes apart, the first call resulted in a busy signal.  Any alleged violation of § 1692d(5) occurred despite CBE's written policy, which states that collectors may attempt to contact a debtor more than once in the same day, as long as subsequent attempts are at least 120 minutes apart, and no calls can be made on the same day as any contact with a debtor.

To determine whether action by a debt collector is false or deceptive under § 1692e, the Court applies an objective standard based on the understanding of the "least sophisticated consumer."[51]  Plaintiff asserts that when CBE placed a telephone call, she intentionally failed to answer the phone, that CBE disconnected the call when the voice mail was activated, and that this action was a deceptive means in an attempt to collect a debt.  Plaintiff elaborates on this claim in her response, where she cites her testimony that she felt CBE calling her from different phone numbers and hanging up without leaving voice mail messages was deceptive because the company was not identified nor was the caller's purpose for calling, which she contends is a deceptive practice designed to deceive debtors into answering or returning the debt collector's call.

The FDCPA does not define "deceptive," which has a general definition of "tending or having power to deceive; misleading."[52]  "Deceive" is generally defined as "to cause to accept as true or valid what is false or invalid."[53]  Even accepting as true plaintiff's allegations, the Court does not see how such actions are deceptive.  To the contrary, the display in plaintiff's caller ID device of CBE's phone numbers was entirely accurate.  Although plaintiff complains that her caller ID did not reveal CBE's identity or name, there is no evidence that CBE blocked this

---

[51]*See, e.g., Ferree v. Marianos*, 129 F.3d 130 (10th Cir. 1997) (table); *Hepsen v. Resurgent Capital Servs., LP*, 383 F. App'x 877, 881 (11th Cir. 2010); *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993); *Ditty v. CheckRite, Ltd.,* 973 F. Supp. 1320, 1329-30 (D. Utah 1997).

[52]MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 298 (10th ed. 1996).

[53]*Id.*

16

information or made any attempt to deceive her.[54]  In this case, the only information conveyed on plaintiff's caller ID display was CBE's phone numbers, which were entirely accurate.  Plaintiff could then choose whether to answer her telephone.

Further, plaintiff does not provide any argument, statutory language or case law explaining how choosing not to leave a message is a deceptive communication.  As CBE points out, under the FDCPA, a debt collector has no right to leave a message and in fact, risks violating either §§ 1692d(6), 1692e(11) or 1692c(b) if it does so.[55]  Plaintiff's argument in effect, asks the Court to create a new rule in her favor that limits the ability of ethical debt collectors and goes beyond the scope and intent of the FDCPA.  If a debt collector has no right to leave a message, then it follows that there can be no requirement that a message be left for a debtor, and no case or statute holds otherwise.  Because there is no legal basis for plaintiff's claim that failure to leave a message is deceptive, CBE is entitled to summary judgment.

### 2.  Unfair or unconscionable means

Likewise, plaintiff maintains that CBE's not leaving a voice mail message is an unfair means to collect a debt.  Plaintiff argues this same conduct is designed to deceive debtors into answering or returning the debt collector's call and is unfair.  However, "[w]here [p]laintiff fails to allege conduct other than that asserted to violate another FDCPA provision, such 'will be

---

[54]*See Glover v. Client Servs., Inc.*, No. 07-CV-81, 2007 WL 2902209, at *3 (W.D. Mich. Oct. 2, 2007) (finding no false or deceptive means when debt collector acted to prevent its telephone number from appearing on caller ID device, causing it to display "unavailable" rather than defendant's telephone number); *cf. Knoll v. IntelliRisk Mgmt. Corp.*, No. 06-1211, 2006 WL 2974190 (D. Minn., Oct. 16, 2006) (denying defendants' motion to dismiss where plaintiff alleged that it contacted plaintiff using telephone registered to an individual, which conveys inaccurate information intended to confuse the recipient as to the identity of the caller).

[55]*See Edwards v. Niagra Credit Solutions, Inc.*, 584 F.3d 1350 1354 (11th Cir. 2009) (explaining that the FDCPA does not guarantee debt collectors the right to leave answering machine messages); *Berg v. Merch. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1344 (S.D. Fla. 2008) (same); *Foti v. NCO Fin. Syst., Inc.*, 424 F. Supp. 2d 643, 659-60 (S.D.N.Y. 2006) (same).

deemed deficient under this provision.'"[56]  Section 1692f identifies several examples of conduct

that constitutes "unfair" or "unconscionable" conduct.[57]  Plaintiff does not allege that CBE

_____

[56]*See Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *5 (E.D. Mich. Sept. 30, 2009); *Foti*, 424 F. Supp. 2d at 667.

[57]The examples listed in 15 U.S.C. § 1692f include:

**(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

**(2)** The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

**(3)** The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

**(4)** Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

**(5)** Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

**(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

> **(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;

> **(B)** there is no present intention to take possession of the property; or

> **(C)** the property is exempt by law from such dispossession or disablement.

**(7)** Communicating with a consumer regarding a debt by post card.

**(8)** Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

violated any of these provisions, but instead appears to rely on the "all-encompassing" general prohibition against "unfair or unconscionable" conduct. Plaintiff fails, however, to articulate how not leaving a message is an unfair means to collect a debt.

The Court fails to see how the conduct alleged in this case constitutes the type of unfair or unconscionable conduct outlawed by the FDCPA. Although the list of prohibited conduct is not all inclusive, failure to leave a message is not similar to the listed conduct. In its Order denying CBE's motion to dismiss, the Court noted that it may be "inferred that repeated, intentional calls, terminated before any communication is made," would be unfair or unconscionable. However, on summary judgment, there is no evidence that CBE made repeated, intentional calls, purposefully terminated before any communication is made—in other words, no intentional hang-up calls, as previously asserted. Instead, the record reveals that plaintiff intentionally refused to answer any calls from CBE, and CBE chose not to leave any messages. CBE is entitled to summary judgment on this claim, as well.

### C. Sanctions

CBE moves for an award of attorneys' fees as sanctions pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and 15 U.S.C. § 1692k(a)(3). CBE contends that plaintiff purportedly hired the law firm of Krohn & Moss, which is based in Los Angeles, to stop the phone calls from CBE and other debt collectors. Instead of sending out a letter requesting CBE cease all communications with plaintiff and direct further communication to them, counsel prepared and filed nine nearly identical lawsuits in different states, none of which are her home state of Vermont. CBE claims it is apparent from plaintiff's deposition testimony and twice amended

Complaint that counsel did not investigate her claims against CBE and used a stock pleading resulting in multiple false allegations, including that plaintiff had informed CBE in writing that she wanted the calls to stop, that she informed CBE that she could not receive personal calls at work and that CBE left messages without identifying itself. CBE also argues that plaintiff's claim that failing to leave a message is deceptive and/or unfair is frivolous.

Although the Court is troubled by the allegations against Krohn & Moss, it ultimately denies CBE's motion.[58] As a preliminary matter, CBE has not filed an affidavit setting forth precisely what amounts it is requesting in sanctions, and thus the Court is unable to fully evaluate CBE's sanction requests. Moreover, a party seeking Rule 11 sanctions must satisfy the procedural requirements of Rule 11(c)(2), commonly known as the "safe harbor" provision. Rule 11 sets forth mandatory requirements that a moving party must comply with before a court is permitted to order sanctions.[59] The moving party must submit the motion for sanctions separate and apart from any other motion or request, and specifically describe the conduct that allegedly violates the rule.[60] The moving party must serve the motion on the opposing party.[61] If, after twenty-one days, the opposing party does not withdraw the challenged paper, claim, defense, contention, allegation, or denial, the moving party may file its motion for sanctions with

---

[58]At oral argument, confusion regarding the status of plaintiff's counsel was brought to light. Although Krohn & Moss, which is based in Los Angeles, is apparently lead counsel for plaintiff, it had not taken steps to be admitted pro hac vice, as required by D. Kan. Rule 83.5.4. When Raymond Probst, Jr. entered his appearance as substitute counsel, he indicated that he was with The Probst Law Firm in Kansas City, Kansas. Although it appears that Mr. Probst appears as local counsel, he has signed pleadings as both a member of Probst Law Firm and Krohn & Moss. After speaking with attorney John Barker of Krohn & Moss in Los Angeles, it appears that failure to seek pro hac vice status was inadvertent; counsel was directed by the Court to file a motion for leave to appear pro hac vice, which was granted after the hearing (Doc. 56).

[59]See Fed. R. Civ. P. 11(c)(2); see also Aerotech, Inc. v. Estes, 110 F.3d 1523, 1528-29 (10th Cir. 1997).

[60]See Fed. R. Civ. P. 11(c)(2).

[61]Id.

the court.[62]  There is no evidence that CBE served plaintiff with its motion for sanctions twenty-one days before filing it.[63]  Thus, CBE is not entitled to Rule 11 sanctions.

Alternatively, section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[64]  As the Tenth Circuit summarized, sanctions are appropriate under § 1927 when an attorney is "cavalier or 'bent on misleading the court'"; when an attorney "intentionally acts without a plausible basis"; "when the entire course of the proceedings was unwarranted"; when "certain discovery is substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay and to increase the costs of the litigation"; or "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."[65]  "Like Rule 11, the court must apply an objective standard and subjective bad faith is not a necessary showing for application of § 1927 sanctions."[66]  The court should only impose sanctions "'in instances evidencing a serious and standard disregard for the orderly process of justice'" and the court must be aware of the "need to ensure that the statute does not dampen

---

[62]*Id.*

[63]*See McCormick v. City of Lawrence*, 218 F.R.D. 687, 691 (D. Kan. 2003) (noting that dismissal would be warranted where defendants did not comply with the twenty-one day requirement); *McGregor v. Shane's Bail Bonds*, No. 10-2099-JWL, 2010 WL 3155635, at *18 (D. Kan. Aug. 9, 2010) (same).

[64]28 U.S.C. § 1927.

[65]*Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (citing *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987)).

[66]*Sheldon v. Khanal*, No. 10-2412-CM, 2010 WL 3825489, at *1 (D. Kan. Sept. 24, 2010).

attorneys' zealous representation of their clients' interests. . . ."[67]  Unlike Rule 11 sanctions, §

1927 sanctions are intended to compensate those who have been wronged as a result of abusive

litigation practices.[68]  Because § 1927 "is penal in nature, 'the award should be made "only in

instances evidencing serious and standard disregard for the orderly process of justice."'"[69]

      CBE argues that Krohn & Moss was on notice that plaintiff's claims lacked merit from

the inception of the case, or at least during the course of discovery.  CBE cites *Tucker v. The*

*CBE Group, Inc.*,[70] in support of its request for sanctions.  In *Tucker*, however, plaintiff

continued to litigate his case through summary judgment and did not move to dismiss any

meritless claims.[71]  Even though the court awarded CBE attorneys fees in that case, it prorated the

award to exclude fees for the colorable claim pursued under § 1692d(5).[72]  In this case, plaintiff

voluntarily withdrew all claims that alleged CBE continued to call despite plaintiff's written

request and that she told CBE not to call her at work, as well as her claim under

§ 1692d(6).  Moreover, CBE fails to acknowledge that, like the plaintiff in *Tucker*, plaintiff had

at least one viable claim, the § 1692d(5) claim regarding CBE causing plaintiff's phone to ring

excessively, from the inception of the case through summary judgment.  Further, although the

claims that failure to leave a message was deceptive and/or unfair have no merit, the Court

---

[67]*Ford Audio Video Sys., Inc. v. AMX Corp., Inc.*, Nos. 97-6169, 97-6171, 1998 WL 658386, at *3 (10th Cir. Sept. 15, 1998) (quoting *Dreiling v. Peugeot Motors of Am., Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985) (internal quotations omitted)).

[68]*Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1205 (10th Cir. 2008).

[69]*Miera*, 143 F.3d at 1342 (citations omitted).

[70]710 F. Supp. 2d 1301 (M.D. Fla. 2010).

[71]*Id.* at 1307 (stating that "a majority of the allegations had no basis in fact and [plaintiff] failed to dismiss any of these allegations, or requests for relief, until a summary judgment motion was filed.").

[72]*Id.*

declines to go so far as to hold they are frivolous.  As noted by CBE, it appears that Krohn & Moss is raising similar claims in cases across the country, and that this Court is one of the first to reject the claim under the record before it, where defendant did not take steps to block or misrepresent its identity on plaintiff's caller ID.  Counsel is cautioned, however, to be circumspect in filing future cases based on the theories espoused in this case.

CBE also argues that Krohn & Moss could have achieved plaintiff's goal of stopping the calls by simply sending CBE a cease and desist letter instead of filing this lawsuit.  But, plaintiff testified that when she signed the verified Complaint, she had informed Krohn & Moss that she had already sent CBE a letter asking them to stop calling.  Although plaintiff realized the error in the verified Complaint, she did not inform counsel, apparently equating the intent to send the letter with actually sending one, and chalking her mistake up to the stress of the situation.  And, plaintiff's confusion appears to have been compounded when she amended her Complaint to state that she had told CBE not to call her at work, possibly confusing CBE with other debt collectors.  When the audio of CBE's conversation indicated that she had not told them she could not receive these calls at work, that claim was withdrawn.  At best, CBE has pointed out the negligent conduct of Krohn & Moss in the course of this litigation, as it could easily have verified that a letter had been sent or received.  However, negligence and lack of merit do not warrant sanctions under § 1927.[73]

CBE further argues that Krohn & Moss's conduct in other similar actions shows a pattern of abuse and bad faith, and that Krohn & Moss frequently files "boilerplate claims."  However, CBE has not presented evidence that the litigation practices in *this* particular case were abusive.

[73]*See Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987).

In fact, it appears that debt collector defendants have been mostly unsuccessful in seeking

sanctions against Krohn & Moss under circumstances similar to this case.[74]  Because CBE has

failed to show that Krohn & Moss's conduct in this case is unreasonable or vexatious, or so

egregious that it is tantamount to bad faith, its motion under § 1927 is denied.

Finally, CBE requests sanctions pursuant to 15 U.S.C. § 1692k(a)(3).  Under the FDCPA,

"on a finding by the Court that an action under [the FDCPA] was brought in bad faith and for the

purpose of harassment," the Court may award to the defendant attorney's fees reasonable in

relation to the work expended and costs."[75] CBE must show that plaintiff knew the claim was

meritless *and* that she pursued the claim for purposes of harassment.[76]  Neither situation is

present here.  In light of the remedial purpose of the FDCPA, the Court construes § 1692k(a)(3)

narrowly.  It also appears that this statute was "designed to thwart efforts of a consumer to abuse

the FDCPA and avoid responsibility to pay a legitimate debt."[77]  Plaintiff testified that was not

her purpose in filing suit.  Further, as discussed above,  plaintiff's claim of repeated and

continuous phone calls was colorable.  Accordingly, the Court cannot find that plaintiff acted in

bad faith, and CBE's request for statutory fees under the FDCPA is likewise denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant The CBE Group,

---

[74]*See e.g., Walsh v. Frederick J. Hanna & Assoc.*, No. 10-cv-0270-GEB-CMK, 2011 WL 537854, at *1-2 (E.D. Cal. Feb. 15, 2011); *Chavez v. Northland Group*, No. 09-2521-PHX-LOA, 2011 WL 317482, at *7-8  (D. Ariz. Feb. 1, 2011); *Ritchie v. Cavalry Portfolio Servs., LLC*, No. 08-cv-1725-T-17MAP, 2010 WL 5662931, at *3-6 (M.D. Fla. Nov. 23, 2010); *Krapf v. Nationwide Credit Inc.*, No. 09-00711 JVS, 2010 WL 2025323, at *5 (C.D. Cal. May 21, 2010); *cf Tucker v. The CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1307 (M.D. Fla. 2010).

[75]15 U.S.C. § 1692k(a)(3).

[76]*Krapf,* 2010 WL 2025323, at *5 (citation omitted).

[77]*South v. Midwestern Audit Servs., Inc.*, No. 09-14740, 2010 WL 5088765, at *8 (E.D. Mich. Aug. 12, 2010).

Inc.'s Motion for Summary Judgment (Doc. 38) is GRANTED with respect to plaintiff's claims under the FDCPA;

**IT IS FURTHER ORDERED** that defendant's Motion for Sanctions (Doc. 38) is DENIED.

**IT IS FURTHER ORDERED** that plaintiffs' Motions to Supplement (Docs. 45, 52) and defendant's Motion for Leave to File Response (Doc. 46) are GRANTED.

**IT IS SO ORDERED.**

Dated: <u>**March 23, 2011**</u>

 **S/ Julie A. Robinson**
**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**
